**Howard BEATTIE, Walter Calicut, Clabon Churchwell, Harold Drumwright, Harold Erickson, Benjamin Fordham, Courther Herring, Herbert Hutchinson, Joseph Labezewski, Joseph McBride, Markham Rogers, Oseas Siamaral, Ellsworth M. Smith, John Troy, William Zielke, Plaintiffs,**

v.

**AMERICAN TRADING & PRODUCTION CORP., Defendant.**

United States District Court
S. D. New York.
June 8, 1959.

————◆————

Cooper, Ostrin & DeVarco, New York City, for plaintiffs (Richard Gyory, New York City, of counsel).

Hammerman & Dolgin, New York City, for defendant (George J. Hammerman, New York City, of counsel).

RYAN, Chief Judge.

This suit comes to us for decision on the agreed statement of facts set forth in the footnote.*

Plaintiffs, merchant seamen, seek a month's penalty wages, under section

---

* The plaintiffs are American merchant seamen. The defendant is a corporation organized under the laws of the State of Maryland and owns, operates, and controls the American-flag steam tanker, Crown Trader, in world-wide trades. On or about December 23, 1957, while the SS Crown Trader lay at Paulsboro, New Jersey, which is a part of the Philadelphia port area, the plaintiffs signed Shipping Articles for a voyage described as follows:

"* * * SS Crown Trader * * * now bound from the Port of Philadelphia Pa. ON A TRAMP TANKER VOYAGE to one or more ports in the West India Islands and/or the North Coast of South America and/or one or more Mexican or United States ports in the Gulf of Mexico, and such other ports or places in the United States and/or the West India Islands and/or the British North American possessions and/or Mexico, as the Master may direct or be directed, with a final port of discharge in the United States for one or more voyages, for a term of time not exceeding three calendar months."

The said vessel sailed from the port of Philadelphia on December 24, 1957, and arrived at a Texas port in the Gulf of Mexico where she loaded a cargo of petroleum products, and returned to the port of Philadelphia (Paulsboro, New Jersey) where she discharged her cargo. Upon completion of discharge, on January 4, 1958, the crew was signed off and

4527 of the Revised Statutes of the United States, 46 U.S.C.A. § 594, which provides:

"§ 594. Right to wages in case of improper discharge. Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned. R.S. § 4527."

Congress has specifically made that statute inapplicable to a coastwise voyage. 46 U.S.C.A. § 544.

Plaintiffs predicate their claim on the language of the shipping articles by which they could have made a foreign voyage. By the stipulated facts, they did not in fact make such a voyage. The clear provision of 46 U.S.C.A. § 544 makes the statutory penalty wages which plaintiffs seek not applicable "to sail or steam vessels engaged in the coastwise trade," and thus inapplicable to the voyage in question, which was indisputably coastwise (Johnson v. Standard Oil Co. of New Jersey, D.C.D.Md.1940, 33 F. Supp. 982).

Moreover the provisions of Section 594 are designed as a penalty "in case of improper discharge." Neither improper discharge nor violation of the shipping articles has been shown. The voyage was strictly in accordance with the shipping articles and plaintiffs' discharge was also permitted as an exercise of the owner's prerogative. Judge Samuel H. Kaufman of this Court carefully and scholarly examined the derivation and legislative history of Section 594 in Lucadou v. United States, D.C.S.D.N.Y.1951, 98 F. Supp. 946. Following the Supreme Court's statement that the compensation provided by Section 594 is a "remedy for invasion of the seaman's right through breach of his contract of employment" (The Steel Trader, 1928, 275 U.S. 388, 48 S.Ct. 162, 163, 72 L.Ed. 326), he concluded:

"Thus it will be seen that where the courts have found liability to exist under § 594, there has been a breach of contract by respondent and a failure to sustain the burden of showing a legal excuse for such breach." 98 F.Supp. at page 947.

There has been no breach of the shipping articles and no right of plaintiffs has been denied them. Consequently, there is no liability for the statutory compensation provided in cases of "improper" discharge.

The Clerk is directed to forthwith enter judgment for defendant without costs.

discharged before a United States Shipping Commissioner.
Each of the plaintiffs herein signed off the Shipping Articles under protest, claiming from the defendant a full month's wages for its alleged violation of Section 4527 of the revised statutes of the United States. (46 USC Sec. 594)
The base monthly wages and ratings of each of the plaintiffs are set forth below:
Howard Beattie, Able Seaman, $357.74
Walter Calicut, Ordinary Seaman, $282.43
Clabon Churchwell, Messman, $272.26
Harold Drumwright, Chief Cook, $435.25

Oscar Erickson, Fireman/Water tender, $357.74
Benjamin Fordham, Bos'un $485.90
Courther Herring, Able Seaman, $357.74
Herbert Hutchinson, Messman, $272.26
Joseph Labezewski, Able Seaman, $357.74
Joseph McBride, Oiler, $357.74
Malcolm Rogers, Able Seaman, $357.74
Oseas Siamaral, Able Seaman, $357.74
Ellsworth M. Smith, Chief Pumpman, $510.79
John Troy, Fireman/Water tender, $357.74
William Zielke, Oiler, $357.74